Case 4:22-cv-01857   Document 37   Filed on 08/09/23 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
August 09, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICHOLAS A. DAHL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-22-1857 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Nicholas Dahl works for the City of Houston Fire Department. He alleges in this Title VII and § 1983 lawsuit that the City violated his rights when it disciplined him for comments he made to fellow firefighters about his own (then almost ex-) wife.[1] While in the middle of a difficult divorce, Dahl—a white man—made (apparently negative) statements about his now ex-wife—a black woman. (Docket Entry No. 26 ("SAC") ¶¶12, 19). He alleges that nonwhite firefighters have made negative comments about their own nonwhite wives without facing punishment. (*Id.* ¶ 20). Dahl alleges that the Fire Department punished him because it disapproved of his interracial marriage. (*Id.* ¶ 21). The City of Houston answered Dahl's second amended complaint, (Docket Entry No. 29), and moved for judgment on the pleadings. (Docket Entry No. 34). The City contends that it disciplined Dahl for unsafe driving and failing to follow Department safety protocols.

For the following reasons, the court grants the motion for judgment on the pleadings. This case is dismissed by separate order.

---

[1] Dahl's second amended complaint also alleged that his union violated its fiduciary duties to him when it failed to properly represent his interests during disciplinary proceedings. (Docket Entry No. 26 ¶ 31). Dahl subsequently dismissed the claims against the union. (*See* Docket Entry No. 33 (order granting the motion to dismiss)).

I.        **The Legal Standard for a Rule 12(c) Motion**

"A motion brought pursuant to Federal Rule of Civil Procedure 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citations omitted). The Rule 12(c) standard is the same as that under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting Twombly, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic

2

deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting Twombly, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

**II.    Analysis**

Dahl asserts claims under Title VII of the Civil Rights Act and under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

Title VII of the Civil Rights Act makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To state a claim under Title VII, Dahl must allege facts sufficient to establish (1) his membership in a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that other similarly situated employees were treated more favorably. *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019).

The City's asserted reason for disciplining Dahl were his "alleged violations of Houston Fire Department policy." (SAC ¶ 16). Those violations related to "unsafe driving" or "not following safety protocol." (*Id.* ¶ 18). Dahl claims that the violations "were never asserted until [he] was accused of making racially derogatory statements about black women." (*Id.* ¶ 18). Dahl denies that he violated Department policy. (*Id.* ¶ 17). He alleges that the reports of his policy violations were made by Dahl's fellow employees, some of whom "ha[d] ulterior motives

3

compelling their false allegations against [him]." (*Id.* ¶ 17). Dahl alleges that other, nonwhite, employees "have been allowed to make reference to their wives, white wives, black wives, wives of other ethnicities, sometimes in an unfavorable light, without punishment." (SAC ¶ 20).

The second amended complaint allegations do not state a claim for race discrimination that violated Title VII. The City may discipline—within constitutional and statutory limits—employees for inappropriate workplace conduct, including speech. The City may also discipline—again, within constitutional and statutory limits—its employees for violating Fire Department or City policies.

Dahl alleges that he was the only white firefighter married to a black woman. He alleges that firefighters not in interracial marriages made offensive comments about black women or about their own wives, without discipline.[2] Dahl does not allege what he said about his own wife, or even the general character of his comments.[3] Nor does Dahl allege specifics about what other firefighters said about their wives or about black women. There is no basis for an inference that there are other firefighters who were similarly situated and made similar comments about their wives or black women but who were not disciplined.

Nor do the allegations that other firefighters had "ulterior motives" for reporting Dahl for unsafe driving that violated City policy, or that the City acted in a discriminatory manner when it disciplined him for those violations, state claims for actionable discrimination. Dahl alleges that "[t]he made up, unwarranted allegations by the City of Houston against Plaintiff were leveled against Plaintiff as a result of his marriage to a black woman" and that "[t]he City of Houston Fire

---

[2] The court notes that an allegation that Dahl made "unsavory and unpleasant [comments] towards black women" is not precluded simply because Dahl was married to a black woman. (SAC ¶ 29).

[3] Dahl only alleges that he "was accused of making racially derogatory statements about black women." (SAC ¶ 18).

4

Department disfavored this union." (*Id.* ¶ 21).  These allegations are conclusory and are not supported by factual allegations that could support an inference that the City's motivations were racist or that the City had a negative opinion of Dahl's interracial marriage.

The City next argues that Dahl cannot succeed on his § 1983 claim because he seeks to recover on a "class of one" theory—that the City "intentionally treated [Dahl] differently from others similarly situated and that there is no rational basis for the difference in treatment." (Docket Entry No. 34 at 6 (quoting *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied, Indus. and Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 334 (5th Cir. 2021))).  "A class-of-one equal-protection claim lies where the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *United Steel*, 9 F.4th at 334 (quoting *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016)).  Dahl accepts that he cannot succeed on a "class of one" theory in the public employment context.  (Docket Entry No. 35 at 5); *see also United Steel*, 9 F.4th at 334.

The City also argues that Dahl's § 1983 equal protection claim must be dismissed for failure to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Municipal liability under § 1983 "requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 at 694).  "The official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting reference omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."

5

(quoting *Monell*, 436 U.S. at 691))). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407. Instead, it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James*, 557 F.3d at 617–18 (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)).

As the Fifth Circuit has summarized:

> [Fifth Circuit] caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim."

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (footnotes and citations omitted).

Dahl fails to state a *Monell* claim.[4] The second amended complaint does not contain factual allegations of a municipal policy or custom. The complaint alleges deficient procedures in one instance, affecting one person. The complaint does not allege facts that could show a policy or custom giving rise to municipal liability. Finally, there are no allegations suggesting that the individual with "final policymaking authority" over department discipline personally disciplined or directed others to discipline Dahl. *Id.*

---

[4] In the second amended complaint, Dahl brings a claim for violation of his equal protection rights. (SAC ¶ 3). Dahl's brief suggests that the claim sounds in due process. (Docket Entry No. 35 at 4 ("The Houston Fire Department deprived Plaintiff of a liberty interest through a custom and/or policy."); *id.* at 5 (referring to the "denial of due process")). Either way, Dahl fails to state a claim for *Monell* liability.

## III. Conclusion

The motion for judgment on the pleadings is granted. Final judgment will be entered by separate order.

SIGNED on August 9, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge